1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT
9              FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   PATRICK GOLDEN,                        CASE NO. CV-F-10-1933 LJO SKO

12              Plaintiff,                  **ORDER ON DEFENDANT'S MOTION TO
                                            DISMISS** (Doc.6)
13        vs.

14   WISCONSIN PHYSICIAN'S SERVICE
     HEALTH INSURANCE CORPORATION,
15
                 Defendant.
16
     _____/
17

18                              INTRODUCTION

19         Defendant Wisconsin Physician's Service Insurance Corporation ("WPS"), erroneously sued as

20   Wisconsin Physician's Service Health Insurance Corporation, moves to dismiss plaintiff Patrick

21   Golden's ("Dr. Golden's") complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6),

22   and 12(b)(7).  WPS argues that this Court lacks jurisdiction over Dr. Golden's claims, as the Tucker Act,

23   28 U.S.C. §1491, confers exclusive jurisdiction over contract-based claims against the United States to

24   the United States Federal Court of Claims.  For this reason, WPS also argues that venue is improper and

25   this Court lacks personal jurisdiction over WPS.  In addition, WPS contends that Dr. Golden's claims

26   must be dismissed for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).  In the alternative,

27   WPS argues that this Court should stay or dismiss this action pursuant to Fed. R. Civ. P. 12(b)(7), for

28   failure to join an indispensable party.  In response, Dr. Golden argues that WPS' motion must be

                                            1

1   dismissed as untimely.  Dr. Golden withdraws his claim for declaratory relief, but contends that his
2   remaining claims are rooted in tort, rather than contract, and are pleaded properly.  In addition, Dr.
3   Golden maintains that WPS is liable for its tortious conduct, and no other party is required to be joined
4   in this action.  Having considered the parties arguments, this Court finds that: (1) this Court has
5   jurisdiction over Dr. Golden's claims; (2) Dr. Golden fails to state a claim on his second cause of action;
6   and (3) Dr. Golden has not failed to join an indispensable party in this action.  Accordingly, this Court
7   GRANTS in part and DENIES in part WPS's motion to dismiss, and DISMISSES Dr. Golden's (first)
8   declaratory relief and (second) Rosenthal Act causes of action.

9                                       **BACKGROUND**

10                                 **Dr. Golden's Allegations**

11       Dr. Golden is a physician in Fresno, California.  On January 28, 2008, he was placed on a five-
12   year probationary status by the California Medical Board.  Among other things, Dr. Golden's
13   probationary status affected certain companies that insure his patients.

14       On April 29,2009, Dr. Golden became aware TriCare, an insurance program administered for
15   the benefit of military families and their minor dependants, would not accept him as a preferred provider.
16   In response, Dr. Golden sent letters to his patients to advise them of the change, to further advise that
17   the patients would be required to pay for medical services out of pocket for the incremental amounts not
18   covered by insurance, and to suggest that the patients consider the services of another physician if they
19   are unwilling or unable to pay the increase in costs.

20       Dr. Golden also sent his letters to patients relying on the TriCare for Life insurance program, a
21   separate insurance program designed for qualified retired military personnel.  WPS administers the
22   TriCare for Life insurance program.  Dr. Golden informed his patients that he could no longer accept
23   TriCare for Life patients unless they could pay for his services.

24       One of Dr. Golden's patients who qualified for TriCare for Life was extremely upset by the
25   change, and called WPS.  WPS informed the patient that TriCare for Life would continue to cover those
26   portions of the insurance payments covered in the past and that the status quo had not changed in spite
27   of Dr. Golden's probationary status.  This patient informed Dr. Golden of this conversation.  Dr.
28   Golden's office manager followed up with WPS' staff administering TriCare for Life.  WPS staff

                                              2

confirmed that Dr. Golden continued to be an approved healthcare provider for the TriCare for Life program and would continue to cover Dr. Golden's patients. As a result, Dr. Golden sent a May 4, 2009 letter to his TriCare for Life patients to inform them that there had been a mistake in his April 29, 2009 letter, and that TriCare for Life would continue to cover Dr. Golden's patients.

On January 7, 2010, WPS contacted Dr. Golden to explain that as a consequence of his probationary status, all monies paid to Dr. Golden after January 28, 2008 were paid erroneously. WPS demanded immediate return of those monies. WPS explained that Dr. Golden was not a "provider" as outlined in certain federal regulations. Dr. Golden sent a letter requesting reinstatement as a provider. That request was denied. The amounts sought by WPS do not correlate to the bills for services rendered to patients by Dr. Golden during the time period.

In either February or March 2010, WPS began to send letters to Dr. Golden's patients falsely informing them that Dr. Golden owed significant sums of money to WPS from claims dating back to January 28, 2008. In some letters, WPS informed patients that Dr. Golden owed WPS as much as $18,000. In other letters, the sum was $7,800. The patients who received these letters, many of them elderly, became very concerned and upset, and complained to Dr. Golden.

Dr. Golden alleges that WPS inaccurately reported negative credit information about him to his patients with an intent to injure him and to encourage Dr. Golden to remit payments to WPS. WPS continued to report this erroneous and inaccurate information to his patients, in spite of being warned that his information was harmful to Dr. Golden. This false information has been accessed by several patients and was republished to others in the community.

Dr. Golden contends that WPS's actions have harmed his business and his reputation in the community. Dr. Golden seeks damages including lost profits, emotional distress, and attorneys' fees. Dr. Golden initiated this action in state court. In his complaint, Dr. Golden asserts the following causes of action against WPS: (1) declaratory relief; (2) violation of the California Fair Debt Collection Practices Act, Cal. Civ. Code §1788 et seq. ("Rosenthal Act"); (3) defamation; and (4) invasion of privacy through publication of private facts and false light.

**Removal Jurisdiction**

WPS removed this action from state court, asserting two grounds for subject matter jurisdiction.

3

First, WPS asserted diversity jurisdiction exists, as Dr. Golden is a citizen of California, WPS is a citizen of Wisconsin, and the amount in controversy exceeds $75,000.  Jurisdiction based on diversity of citizenship is not contested.  Second, WPS asserted that jurisdiction pursuant to 28 U.S.C. §1442(a)(1). WPS contends that 28 U.S.C. §1442(a)(1) applies, because it was acting under the direction of a federal officer. To support this removal jurisdiction, WPS avers the following additional facts:

WPS is the prime contractor of the TriCare Dual Eligible Fiscal Intermediary Contract ("Tricare Contract").  WPS processes healthcare claims for payment under the TriCare for Life program.  TriCare for Life provides health care benefits to an eligible TriCare beneficiary who has Medicare eligibility and who has TriCare eligibility through his or her relationship to a uniformed service member.  Under the TriCare Contract, WPS is a fiscal intermediary contractor chosen by the United States Department of Defense ("DoD") and the TriCare Management Activity ("TMA"), a federal office which is part of the DoD.

The TriCare program was established by the DoD to provide health benefits to beneficiaries as described in 32 C.F.R. §199.3 and includes armed forces members and their dependents.  TriCare is administered by the federal government "through managed care support contracts that include special arrangements with civilian sector health care providers." 32 C.F.R. §199.17(a)(1).  As prime federal contractor for the TriCare Contract, WPS provides administrative services for the TricCare for Life program including processing claims, preparing checks for payment to healthcare providers, and pursing recoupment of overpayments to healthcare providers providing benefits to TriCare for Life beneficiaries.

WPS does not fund the payment of TriCare for Life benefits to healthcare providers for covered health care services.  WPS prepares the checks drawn on a specified claims payment account opened and maintained pursuant to the TriCare Contract and applicable federal regulations.  That account is funded directly by the United States of America ("government") with federal funds.  These federal funds are disbursed pursuant to TMA policies, directives, and applicable federal laws and regulations.

WPS contends that the acts performed by WPS for the TriCare for Life program, including those complained of by Dr. Golden, were either required by the TMA and applicable federal laws and regulations, expressly directed by the TMA, or expressly approved by the TMA in accordance with WPS' contractual obligations under the TriCare Contract.  Based on these facts, WPS concludes that it

4

1   qualifies as a person acting under the direction of a federal officer (TMA and DoD) and is entitled to

2   removal pursuant to 28 U.S.C. §1442(a). In addition, WPS suggests that it has colorable federal

3   defenses, including the pending motion to dismiss for lack of subject matter jurisdiction based on its

4   claim that it is entitled to sovereign immunity. Dr. Golden did not object to removal.

5   **Motion to Dismiss**

6       WPS asserts additional factual allegations in its motion to dismiss. WPS attaches multiple

7   exhibits to its motion, including a copy of the TriCare Operations Manual 6010.56-M ("Operations

8   Manual). WPS cites to these exhibits, including the Operations Manual, and TriCare regulations, to

9   contend the following:

10       Dr. Golden was not authorized to be a TriCare provider when he went on probationary status.

11   Dr. Golden knew or should have known that he was not an authorized provider, and that the WPS

12   representative had not provided current information as to his status. Dr. Golden nevertheless exploited

13   that mistake and continued to provide healthcare services to TriCare for Life beneficiaries.

14       In its defense to sending the letters to Dr. Golden's patients, WPS alleges that TMA requires that

15   patients be informed of their rights not to be billed in this situation, and requires WPS to send letters to

16   patients alerting them of recoupment efforts and that they are not responsible for paying the provider.

17   WPS contends that it exercised no discretion in sending the letters, and that the letters were

18   "substantively authored" by the TMA and sent at the direction of the TMA. WPS concludes that in this

19   circumstance, WPA enjoys sovereign immunity, and Dr. Golden's claims are barred.

20   **Procedural History**

21       Dr. Golden initiated this action in state court. WPS removed this action on October 14, 2010

22   and moved to dismiss on October 21, 2010. Dr. Golden opposed the motion on December 2, 2010.

23   WPS filed a reply on December 9, 2010. This Court found this motion suitable for a decision without

24   a hearing, vacated the December 16, 2010 hearing pursuant to Local Rule 230(g), and issues the

25   following order.

26   **DISCUSSION**

27   **Timeliness**

28       Dr. Golden argues that WPS' motion must be denied as untimely. Relying on Fed. R. Civ. P.

12(a)(1)(A)(I), Dr. Golden asserts that WPS had twenty-one days after being served with the summons and complaint in which to file a responsive pleading.  The summons and complaint were served on September 16, 2010.  This motion was filed on October 21, 2010.  Because the motion was filed more than twenty-one days after service of the summons and complaint, Dr. Golden argues that the motion must be denied.

WPS points out that this action originated in state court. 28 U.S.C. §1446(b) allows a defendant 30 days to remove an action to federal court.  This action was removed on October 14, 2010, less than 30 days after service of process.  Moreover, pursuant to Fed. R. Civ. P. 81(c)(2)(C), a defendant may file a responsive pleading "7 days after the notice of removal is filed."  This motion, filed on October 21, 2010, was filed 7 days after the notice of removal.  Accordingly, WPS's motion is timely.

**Declaratory Relief**

Dr. Golden's first cause of action is for declaratory relief.  Dr. Golden sought a declaration that WPS is not entitled to the amount demanded.  Dr. Golden alleges that WPS represented to Dr. Golden's employees and patients that his patients would continue to be covered under the TriCare for Life program.  Dr. Golden contends that he relied reasonably upon these representations and that but for this reasonable reliance, Dr. Golden would not have treated his patients who are covered by TriCare for Life.  Thus, Dr. Golden seeks a declaration that Dr. Golden is entitled to retain the sums that he collected based on his justifiable reliance on WPS's representations.

In WPS' motion to dismiss, WPS argues, *inter alia*, that this claim is moot since WPS is no longer pursuing recoupment of the funds at issue. In response, Mr. Golden "accepts Defendant's judicial admission" and concedes that this claim is "effectively, rendered moot by this judicial admission."  Mr. Golden concludes his opposition by stating that his declaratory relief cause of action is "withdrawn." For good cause appearing, this Court DISMISSES this cause of action.

///

///

///

///

///

1

**Jurisdiction**

2

*Fed. R. Civ. P. 12(b)(1) Standards of Review*[1]

3

WPS contends that this Court lacks jurisdiction over Mr. Golden's claims pursuant to Fed. R.

4   Civ. P. 12(b)(1).  In considering a motion to dismiss for lack of subject matter jurisdiction, the plaintiff,

5   as the party seeking to invoke the court's jurisdiction, always bears the burden of establishing subject

6   matter jurisdiction.  *Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495, 499 (9th Cir.

7   2001).  The court presumes a lack of subject matter jurisdiction until the plaintiff proves otherwise.  *See*

8   *Kokkonen v. Guardian Life Ins. Co. of America*, 114 S.Ct. 1673, 1675 (1994).

9

The court must also consider whether the motion to dismiss is "facial, confining the inquiry to

10  allegations in the complaint, or factual, permitting the court to look beyond the complaint." *Savage v.*

11  *Glendale Union High School*, 343 F. 3d 1036, 1039-40 n.2 (9th Cir. 2003); *see also, White v. Lee*, 227

12  F.3d 1214, 1242 (9th Cir. 2000).  In  the facial attack, a party challenges subject matter jurisdiction by

13  asserting that the allegations in the complaint are insufficient on their face to invoke federal jurisdiction.

14  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In this case, the court must

15  consider the allegations of the complaint as true.  *See Thornhill Publishing Company, Inc. v. General*

16  *Telephone & Electronics Corp.,* 594 F.2d 730 (9th Cir. 1979).  In a factual challenge, the truth of the

17  allegations,  which  would  otherwise  invoke  subject  matter  jurisdiction,  is  challenged.    In  this

18  circumstance, this Court "is not restricted to the face of the pleadings, but may review any evidence,

19  such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."

20  *McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir. 1988).

21

*Tucker Act*

22

WPS contends that Dr. Golden's claims are contract-based, and must be dismissed because they

23  fall within the exclusive jurisdiction of the United States Court of Federal Claims under the Tucker Act,

24  28 U.S.C. §1491.  The Tucker Act grants the United States Court of Federal Claims jurisdiction "to

25  render judgment upon any claim against the United States founded upon...any express or implied

26

27

[1] WPS argues that this Court lacks jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(3).  In its motion and reply, however, WPS ignores the standards of review and law applicable to Fed. R. Civ. P. 12(b)(2) and 12(b)(3). Accordingly, this Court considers WPS's jurisdictional challenges pursuant to Fed. R. Civ. P. 12(b)(1).  WPS's  motion to

28  dismiss pursuant Fed. R. Civ. P. 12(b)(2) and 12(b)(3) is denied based on WPS's failure to address these rules.

contract with the United States..." 28 U.S.C. §1491(a)(1).  Pursuant to this statute, the "Court of Federal Claims possesses exclusive jurisdiction of claims arising under the Tucker Act in excess of $10,000." *United States v. Park Place Assocs.*, 563 F.3d 907, 927 (9th Cir. 2009).[2]   As the Ninth Circuit Court of Appeal explains:

> The Tucker Act supplies both a basis for the exercise of subject matter jurisdiction and a concomitant waiver of sovereign immunity in the Court of Federal Claims.  This is a package deal–the waiver of sovereign immunity is coextensive with the jurisdiction the statute confers.  The Tucker Act thus never waives sovereign immunity for suit in, nor confers jurisdiction on, the [Eastern] District of California.

*Id*.  Although the "Tucker Act applies only to claims for money damages," *Laguna Hermosa Corp. v. Martin*, 643 F.2d 1376, 1379 (9th Cir. 1981), the statute "impliedly forbids declaratory and injunctive relief" for claims rooted in contract. *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1485 (9th Cir. 1985) (internal quotations omitted).

To determine whether a claim falls under Tucker Act, this Court considers whether the claim exists independently of a contract and whether it is statutorily-based. *See, Tuscon Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 646-47 (9th Cir. 1998).  This Court lacks jurisdiction over a claim that cannot exist independently of a contract. *Id*.  A claim that is "at its essence" based on a contract is subject to the Tucker Act. *North Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir 1994) (en banc)*.*  In addition, "where the 'tort' complained of is based entirely upon" a breach of contract, the Tucker Act precludes jurisdiction. *Woodbury v. United States*, 313 F.2d 291 (9th Cir. 1963).

Dr. Golden's declaratory relief claim arguably was rooted in contract.  WPS argues, and Dr. Golden concedes, that this action is based on a contract or quasi-contract theory of promissory estoppel. As set forth above, Dr. Golden withdrew this claim.  Accordingly, this Court need not consider whether it has jurisdiction over Dr. Golden's dismissed cause of action.

Dr. Golden's second cause of action asserts a claim under California's Rosenthal Act.  This claim is based on a statute, and does not fall within the Tucker Act's jurisdiction provision. *Cf., Berdick v.*

---

[2] A separate provision confers district courts with concurrent jurisdiction over claims against the United States for less than $10,000. 28 U.S.C. §1346(a)(2).  Dr. Golden may waive his right to receive more than $10,000 to satisfy this provision and obtain jurisdiction over his contract claims in this Court. *Marceau v. Blackfeet Hous. Auth*., 455 F.3d 974, 986 (9th Cir. 2006), *readopted on reh'g*, 540 F.3d 916, 929 (9th Cir. 2008).  Dr. Golden has not waived his right to receive more than $10,000 on his claims.

1    *United States*, 612 F.2d 633 (Fed. Cir. 1979) (Court of Federal Claims had no jurisdiction over suit by

2    physician against Medicare intermediary for reimbursement).

3          Similarly, WPS fails to establish that Dr. Golden's claims tort claims sound in contract.  In his

4    third and fourth cases of action, Dr. Golden asserts claims for defamation and invasion of privacy.  WPS

5    contends that these tort claims are "disguised" contract claims, but points to no contract upon which

6    these claims are based.[3]  Rather, Dr. Golden's dispute may be characterized as arising under the TriCare

7    program. Such disputes are not rooted in contract. *See Bloomington Hospital v. United States*, 29 Fed.

8    Cl. 286 (Fed. Cir. 1993) (Court of Federal Claims lacks jurisdiction over claims wholly based on dispute

9    over Medicare reimbursement, such claims are not rooted in contract); *see also*, 32 C.F.R. §199.6

10   (outlining TriCare recoupment procedures).  Moreover, the Tucker Act acknowledges that some

11   claims–based on the same facts– may be rooted in both tort and contact and creates a separate scheme

12   for these claims. *See, Ft. Vancouver Plywood Co.* v. United States, 860 F.2d 409, 415 (Fed. Cir. 1988)

13   (a party is "required to file separate actions seeking recovery in tort and contract due to the jurisdictional

14   scheme of our court system.").  Under this scheme, the Court of Federal Claims lacks jurisdiction to hear

15   tort claims, including defamation claims. *See, Berdick*, 612 F.3d 533; *see also, Zhao v. United States*,

16   91 Fed. Cl. 95 (Fed. Cl. 2010) (defamation and invasion of privacy claims were not subject to Tucker

17   Act jurisdiction since district courts have exclusive jurisdiction over tort claims against United States);

18   *Matthew v. United States*, 72 Fed. Cl. 274 (Fed. Cl. 2006) (Court of Federal Claims lacked jurisdiction

19   over party's claims of libel and defamation, as claims sounded in tort).  Here, Dr. Golden asserts his

20   rights based on the allegedly tortious conduct of WPS in sending the letters to Dr. Golden's clients.  His

21   defamation and invasion of privacy claims are rooted in tort.  Accordingly, the Tucker Act does not

22   preclude jurisdiction over these claims.

23          For these reasons, this Court denies WPS' motion to dismiss for lack of subject matter

24   jurisdiction.

25

26          [3]WPS relies on several federal regulations and the Operations Manual to support its argument.  Reliance on the
     federal regulations, however, suggests that Dr. Golden's claims–or WPS's defenses–are s*tatutorily*-based, not contract-based.
27   Thus, WPS's arguments further support this Court's conclusion that the Tucker Act does not preclude this Court's jurisdiction
     over Dr. Golden's claims.  To the extent WPS relies on the Operations Manual, that manual–if it is a contract–does not
28   implicate contractual rights or obligations for Dr. Golden.

**Failure to State a Claim**

*Standards of Review*

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the pleadings set forth in the complaint.  A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations of the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor.  *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).  A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir.2003) (citation omitted).  "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.2d 962, 969 (9th Cir.2009).

**Rosenthal Act Claim**

WPS argues that Dr. Golden cannot assert a Rosenthal Act claim, because the debts at issue are not "consumer debts" arising from a transaction in which the debt was "acquired on credit" and "primarily for personal, family, or household purposes."  The Rosenthal Act protects "debtors," defined a person "from whom a debt collector seeks to collect a consumer debt[.]" Cal. Civ. Code §1788.2(h).

1   A "consumer debt" is money "due or owing...by reason of a consumer credit transaction." Cal. Civ. Code

2   §1788.2(f).  A "consumer debt transaction" is a "transaction ...in which property, services, or money is

3   acquired on credit by that natural person from such other person primarily for personal, family, or

4   household purposes." Cal. Civ. Code §1788.2(e).  Moreover, a party is only liable under the Rosenthal

5   Act if it is a "debt collector," defined as "any person who, in the ordinary course of business, regularly,

6   and on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code §1788.2(c).

7         Dr. Golden fails to state a Rosenthal Act claim.  Dr. Golden alleges that the disputed money was

8   acquired through his performance of healthcare services.  Thus the money was acquired for professional,

9   rather than "personal, family, or household purposes."  In addition, Dr. Golden fails to identify which

10  sections of the Rosenthal Act WPS allegedly violated, and failed to allege essential elements to satisfy

11  the Rosenthal Act.  Dr. Golden's complaint fails to assert facts that suggest that WPS is a debt collector,

12  that WPS was attempting to collect a consumer debt, or WPS qualifies as a debt collector.  Accord,

13  *Castaneda v. Saxon Mortgage Servs., Inc.*, 687 F. Supp. 2d 1191 (E.D. Cal. 2009).   Accordingly, Dr.

14  Golden's Rosenthal Act claim is dismissed.

15                                        **Tort Claims**

16        WPS argues that Dr. Golden's tort claims are barred by sovereign immunity.  Sovereign

17  immunity is a jurisdictional bar to proceeding against the government.[4]  "[T]he United States may not

18  be sued without its consent and [] the existence of such consent is a prerequisite to jurisdiction." *United*

19  *States v. Mitchell*, 463 U.S. 206, 211 (1983).   Evidence of the government's consent must be

20  unequivocal and may not be implied. *Blue v. Widnall*, 162 F.3d 541, 544 (9th Cir. 1998).   The

21  government's consent to suit defines the jurisdiction of the court to hear an action against the federal

22  government. *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987).  The party asserting jurisdiction

23  has the burden to establish all jurisdictional facts. *Indust. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090,

24  1092 (9th Cir. 1990).

25        WPS contends that it enjoys sovereign immunity to the same extent as the TMA. WPS maintains

26

27  ───────────────

28        [4] Although WPS presents this argument under his motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court
     considers a motion to dismiss on sovereign immunity grounds pursuant to Fed. R. Civ. P. 12(b)(1).

that sovereign immunity bars suits against private corporations acting as fiscal intermediaries in actions relating to federal healthcare benefits programs.  The case law relied up by WPS, however, does not support this position.

WPS erroneously cites a number of cases in which the government is a party to argue that a private corporation enjoys sovereign immunity.  For example, WPS relies on *Allstate Ins. Co. v. TriCare Management Activity*, 662 F. Supp. 2d 883 (W.D. Mich. 2009) for its position that "federal courts have likewise extended sovereign immunity to private corporations acting as fiscal intermediaries in actions arising out of the TRICARE program."  In *Allstate*, however, the court considered whether sovereign immunity barred suit against the Department of the Air Force and Tricare, not a private corporation. *Id*. at 889.  Similarly, in *Anderson v. Occidental Life Ins. Co.*, 727 F.2d 855 (9th Cir. 1984), the court  did not rule, as WPS asserts, that "the intermediary would be immune for suit."  As to the intermediary, the court found that the appeal was untimely and dismissed the claim on those grounds.  As to a claim against the government, however, the court ruled "sovereign immunity protects Medicare funds." *Id*. Here, the government is not named in this complaint, and Dr. Golden is not seeking to recover TriCare funds.  Rather, Dr. Golden is seeking to recover from WPS for its allegedly tortious conduct of sending the letters to his patients.  Recovery for this conduct would come from WPS, not TriCare funds.  Thus, the cases relied on by WPS are inapposite.

WPS also relies on *Del Campo v. Kennedy*, 517 F.3d 1070, 1080 (9th Cir. 2008) for its position that sovereign immunity bars suits against private corporations acting as fiscal intermediaries in actions relating to federal healthcare benefit programs.  *Del Campo* made no such pronouncement.  Rather, the court in *Del Campo* considered Supreme Court cases, Ninth Circuit cases, and cases from other circuits to find that "all but the Eleventh Circuit have denied state sovereign immunity to private entities, more or less categorically." *Id*.  The Ninth Circuit explained: "Only the Eleventh Circuit has ever, as far as we can ascertain, accorded sovereign immunity to a private entity, under an analysis which we do not find persuasive[.]" *Id*.  The Court specifically noted that the Eleventh Circuit case was not well-reasoned because the Medicare cases upon which it relied "did *not* accord sovereign immunity to private parties. Instead, Medicare regulations provide that private parties 'act on behalf' of the government, and that the government 'is the real party in interest' in any litigation involving the program." *Id*. (emphasis in

1  original) (citing 42 C.F.R. §421.5(b)[5]).  Accordingly, WPS has not established that it is entitled to

2  sovereign immunity as a matter of law.

3      In addition, questions of fact remain as to whether WPS acted as an agent of the United States.

4  WPS alleges that it is an agent of the federal government acting under the control of the Director of the

5  TMA, and ultimately the Secretary of the DoD.  These allegations are based on facts outside of the

6  complaint.  WPS relies on, *inter alia*, the Operations Manual to support these allegations.  Some of

7  WPS's factual allegations are unsupported.  Nevertheless, agency is a question of fact for the fact-finder

8  to determine.  In addition, while this Court can take judicial notice of the existence of the Operations

9  Manual, the court cannot rely on it to resolve disputed facts in a motion to dismiss.

10     For these reasons, WPS's motion to dismiss Dr. Golden's tort claims fails.

11                          **Failure to Join Required Party**

12     In the alternative, WPS moves to either stay or dismiss this action pursuant to Fed. R. Civ. P.

13  12(b)(7).  Fed. R. Civ. P. 12(b)(7) authorizes this Court to dismiss an action if a plaintiff has failed "to

14  join a party under Rule 19."  Fed. R. Civ. P. 19(a) provides, *inter alia*, that a person "must be joined as

15  a party" if "in that person's absence, the court cannot accord complete relief among existing parties."

16  If that required person cannot be joined, then "the court must determine whether, in equity and good

17  conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ.

18  P. 19(b).

19     WPS contends that TMA is a required party in this action.  WPS maintains that it simply

20  administered the TriCare for Life program for the TMA, and that TMA is now pursuing the disputed

21  funds against Dr. Golden.  WPS argues that to the extent that Dr. Golden alleges tort and statutory

22  claims, those claims lie with TMA, WPS' disclosed principle, and not WPS.  Absent participation of the

23  TMA in this lawsuit, WPS concludes, the Court cannot complete relief among the parties.  Dr. Golden

24  counters that neither the government nor TMA is an indispensable party in this action because WPS is

25  liable for its own tortious conduct.

26  _____

27     [5] WPS has failed to cite to a similar TriCare regulation.  In any event, the grounds for dismissal would be statutory,
    and do not implicate sovereign immunity, as the court explained in *Del Campo v. Kennedy*, 517 F.3d 1070, 1080 (9th Cir.

28  2008).

1   The Court considers this request under the present procedural posture of this action.  The case

2   law cited above makes clear that the government is the real party in interest in an action to pursue federal

3   funds.  *See, Anderson*, 727 F.2d 855.  Thus, the Court agrees with WPS that the government would have

4   been an indispensable party in a dispute over TriCare funds.  Dr. Golden, however, withdrew his

5   declaratory relief claim, the only claim that implicated a dispute over federal funds.  Only two claims

6   survive this motion:  Dr. Golden's defamation and invasion of privacy claims against WPS for the

7   alleged publication of false information to his patients.  Recovery of those claims would be chargeable

8   to WPS alone.  WPS has failed to establish that the TMA is an indispensable party as to Dr. Golden's

9   tort claims against WPS.  Accordingly, this Fed. R. Civ. P. 12(b)(7) motion is denied.

10   CONCLUSION

11   For the foregoing reasons, this Court:

12   1.   DISMISSES Dr. Golden's (first) declaratory relief cause of action, based on Dr.

13        Golden's withdrawal;

14   2.   DENIES WPS' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and

15        12(b)(3);

16   3.   GRANTS in part and DENIES in part WPS' Fed. R. Civ. P. 12(b)(6) motion,

17   4.   DISMISSES Dr. Golden's (second) Rosenthal Act cause of action; and

18   5.   DENIES WPS' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(7).

19   IT IS SO ORDERED.

20   Dated:   **December 16, 2010**              **/s/ Lawrence J. O'Neill**
                                              UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

14